```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ING GLOBAL,                          :
                                     :
              -v-                    :   11 Civ. 5697 (JSR)
                                     :
UNITED PARCEL SERVICE OASIS          :   MEMORANDUM
COMP SUPPLY CORPORATION; BONE        :
SAFETY SIGNS, LLC; DOUG              :
VOLLENWEIDER; MICHAEL ROSE;and       :
JAMES THOMPSON                       :
                                     :
              Defendants.            :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff ING Global brings this diversity suit against defendants United Parcel Service Oasis Supply Corporation ("UPS"); three employees of UPS, namely, Doug Vollenweider, Michael Rose, and James Thompson (the "Individual Defendants"); and Bone Safety Signs, LLC. The suit arises out of plaintiff's contract with UPS to deliver Reusable Network Containers ("RNCs") to UPS. Plaintiff alleges that UPS and its employees fraudulently induced plaintiff to enter into the contract and that, even if it is a valid contract, defendant UPS breached the contract.[1] Defendant UPS and the Individual Defendants (collectively "the defendants") moved to dismiss the Complaint in part, and the Court, by Order dated November 17, 2011, granted that motion, concluding that the Court lacks personal jurisdiction over the Individual Defendants and therefore all claims against the Individual Defendants must be

---

[1] Plaintiff also brought a claim for specific performance, but it "voluntarily dismisse[d]" in its brief. Plaintiff ING Global's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 2. n.3.

1

dismissed, and that the fraud claim must also be dismissed because the plaintiff has failed to plead that claim with the particularity required by Federal Rule of Civil Procedure 9(b). This Memorandum sets forth the reasons for those rulings.

On a motion to dismiss, the Court accepts for purposes of the motion the well-pleaded allegations of the Complaint ("Compl.") and any documents referenced therein. So far as the jurisdictional issues are concerned, the Court may also rely on the declaration of Nina Soomekh, President of ING, because "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999).

Plaintiff ING Global is a New York corporation. Compl. ¶ 1. Defendant UPS is a Delaware corporation with its principal place of business in Atlanta, Georgia. Defendant UPS supplies bags to United Parcel Service's operations in the United States and around the world. Id. ¶ 14. The bags, known as Reusable Network Containers ("RNCs"), are either newly manufactured bags or used bags that have been repaired for re-use by United Parcel Service. Id. ¶ 15.

All of the Individual Defendants are residents and citizens of Georgia. Id. ¶¶ 4-6. The Individual Defendants are responsible for the bid and contracting process necessary to procure new and

2

repaired RNCs for United Parcel Service's worldwide operations. Id. ¶ 16.[2]

Beginning in 2007, Plaintiff entered into one-year contracts with defendant UPS for the supply of new RNCs. Id. ¶ 17. Plaintiff was not the primary supplier during 2007-2009. Instead, the primary supplier was co-defendant Bone Safety. Id. ¶ 24. From 2007-2009, Bone Safety received 100% of the RNC repair business and a majority (approximately 70%-80%) of new RNC business. Id. ¶ 25.

In 2010, however, UPS decided to enter into a longer-term relationship with an RNC supplier. Id. ¶ 30. The defendants therefore encouraged plaintiff to bid on a contract to supply UPS with new RNCs and to repair old ones. Id. ¶ 29. After two rounds of bidding, ING won the bid for that contract. Id. ¶ 46.

In preparing its bids for the contract, ING relied on UPS's prior volume of new RNCs (800,000 to 1 million per year), the fact that UPS's prior primary supplier received approximately 70%-80% of new RNC orders, and the representation in the 2010 Bid Form that the primary supplier would win the entire repair program and "at least 50%" of the program to supply new RNCs. Id. The Individual Defendants went further and informed ING that the primary supplier would receive 70-80% of new RNC orders. Id. ¶ 43.

---

[2] The RNC bidding process was run primarily by Vollenweider under the supervision of Defendants Rose and Thompson. Compl. ¶ 27. In 2010, Vollenweider was out on leave, and thus Rose was in charge of the bidding process for that year. Id. ¶ 33.

The parties entered into a three year contract with a fixed price for both new and used RNCs. Id. ¶ 47. The contract estimated that UPS would require 740,000 RNCs in 2010 and 230,000 in each of the subsequent two years. Id. UPS asked ING to deliver 744,000 RNCs in 2010 and 230,000 RNCs in 2011. Id. Although ING had been awarded 100% of the repair program, UPS did not provide ING any of the repair business in 2010. Moreover, Bone Safety retained the repair RNC contract. Id. ¶ 66.

Although the Individual Defendants told ING that ING was going to receive more than 230,000 in new RNC orders in 2011 and 2012, plaintiff alleges that "this representation was false and the Individual Defendants knew it because they intended all along not to provide a majority of the new RNC business in 2011 to ING, but rather to find a way to get around the Contract and obtain even lower pricing on new RNCs." Id. ¶ 60. In July 2011, UPS informed ING that an additional 624,000 new RNCs were needed for 2011, but "that pricing for those additional units would be subject to a competitive bidding process." Id. ¶ 61. UPS awarded this order to Bone Safety. Id. ¶¶ 63-64. ING alleges that this was a repudiation and breach of its contract with UPS. Id. ¶ 65.

The Court must first consider whether it has personal jurisdiction over the Individual Defendants.[3] Plaintiff need only make a prima facie showing of personal jurisdiction in order to

---

[3] Defendant UPS concedes that it is subject to personal jurisdiction in New York. Defendant's Reply Brief in Support of Motion to Dismiss ("Def. Reply Mem.") at 1 n.2.

4

survive a motion to dismiss. Metro Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). ING acknowledges that the Individual Defendants are not subject to general jurisdiction in New York; it asserts instead that the Individual Defendants are subject to specific jurisdiction. Plaintiff ING Global's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 4, n.4.

Specifically, ING asserts that this Court has personal jurisdiction over the Individual Defendants through two provisions of New York's Long Arm Statute. Those provisions confer personal jurisdiction over out-of-state residents if they transacted any business within the state, N.Y.C.P.L.R. § 302(a)(1), or if they committed a tort outside of New York that caused injury in New York and they regularly did or solicited business in New York. N.Y.C.P.L.R. § 302(a)(3)(i). However, the Complaint itself does not appear to allege the transacted business basis of the long-arm statute. But even assuming *arguendo* that the Complaint were amended to plead both bases of long-arm jurisdiction, neither basis is satisfied here.

In order to make out a prima facie case of jurisdiction under § 302(a)(1), a plaintiff must plead facts showing that defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within [New York], by transacting business in New York, where the cause of action arises out of the subject matter of the

5

transacted business." Barron Partners, LP v. Lab 123, Inc., No 07 Civ. 11135 JSR, 2008 WL 2902187, at *11 (S.D.N.Y. July 25, 2008) (internal citations and quotation marks omitted). Generally, "telephone and mail contacts do not constitute 'transacting business' under the statute. Palace Exploration Co. v. Petroleum Dev. Co., 41 F. Supp. 2d 427, 433 (S.D.N.Y. 1998)

Even if the defendants had a sufficient number of contacts with the plaintiff,[4] the plaintiff has failed to make out a prima facie case of personal jurisdiction.[5] In order for out-of-state communication about a contract alone to confer personal jurisdiction, the "center of gravity" of that contract must be New York. In other words, "where a defendant's 'contacts with New York consist of telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that has a center of gravity well outside the state,' there is no personal jurisdiction under C.P.L.R. § 302(a)(1)." Digital Lab Solutions, LLC v. Stickler, 2007 WL 700821, at *3 (S.D.N.Y. Mar. 7, 2007) (quoting Palace Exploration, 41 F. Supp. 2d at 434).

---

[4] For example, it is unclear how many of the contacts were with ING's predecessor, NIRA. In light of the Court's decision *infra*, it need not explore this issue further.

[5] Plaintiff spends several pages of its brief arguing that the "fiduciary shield doctrine" does not apply in New York. See Pl. Mem. at 4-8. Under that doctrine, "an individual should not be subject to jurisdiction if his dealings in the forum State were solely in a corporate capacity." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 40, 467-68 (1988). The New York Court of Appeals rejected the fiduciary shield doctrine in 1988. Id. As the Second Circuit later recognized, Kreutter held that the fiduciary shield doctrine does not apply to any of the provisions of New York's long-arm statute. Retail Software Services, Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988). But in fact, the defendants do not argue that the fiduciary shield doctrine applies, Def. Reply Mem. at 2 n.3, and therefore plaintiff's argument is an irrelevancy.

6

In determining the center of gravity of the contract, the most significant factor is where the performance of the contract is to take place. DirecTV Latin America, LLC v. Park 610, LLC, 691 F. Supp. 2d 405 (S.D.N.Y. 2010).

Here, the center of gravity of the contract was not New York. The contract at issue did not require any performance to take place in New York. See Rose Decl. ¶¶ 10-11. The contract had choice of law and choice of forum provisions in favor of Georgia. Compl. Ex. 6, at ¶ 15. Moreover, according to the Complaint, the products at issue in this case are used in "United Parcel Service's operations in the United States and around the world." Compl. at ¶ 14. The plaintiff manufactured new bags in China. Rose Decl. ¶ 13. The bags in need of repair were to be shipped from UPS's storage facility in Illinois, see Complaint at ¶ 52, and delivered to China. Compl. Ex. 7 at 4. Repaired bags were to be returned from China to Chicago. Def. Reply Mem. at 7. The previous primary supplier, Bone Safety, which was based in Georgia, manufactured new bags and repaired used bags in China. Compl. ¶ 24.

Plaintiff argues that it was based in New York and directed activity under the Contract from its headquarters in New York. If plaintiff's location and activity in New York alone were sufficient to establish New York as the focal point of the contract, however, then nearly every time an out-of-state defendant entered into a Contract with a New York corporation, the center of gravity of the

7

contract would be New York. This would vitiate the separate center of gravity requirement. Therefore, the plaintiff has failed to state a prima facie case of personal jurisdiction against the Individual Defendants on the transacted business basis of personal jurisdiction.

The Court turns next to plaintiff's second asserted basis for jurisdiction: that the Individual Defendants committed a tort outside of New York that caused injury in New York and that the Individual Defendants regularly did or solicited business in New York. Plaintiff has met the first part of this test; it has properly alleged an out-of-state tort causing in-state harm. But, in order to be subject to jurisdiction under Section 302(a)(3)(i), the Individual Defendants must also have engaged in "ongoing activity *within* New York State" that is regular, persistent or substantial. Ingraham v. Carroll, 90 N.Y. 2d 592, 597 (1997) (emphasis in original). Although *UPS* may have regularly conducted business in New York, the Complaint does not adequately allege that the Individual Defendants regularly conducted business in New York. The Plaintiff has not alleged that the Individual Defendants conducted any ongoing activity in New York outside of their contacts with ING, and their actions taken with respect to ING alone are not enough to establish a course of ongoing activity in New York. Plaintiff has thus failed to establish a prima facie case of

jurisdiction under the out-of-state tort basis of jurisdiction.[6] Therefore, the Court lacks personal jurisdiction over the Individual Defendants and all claims against them are dismissed with prejudice.

UPS also argues that the fraud count against it should be dismissed because of plaintiff's failure to plead that count with sufficient particularity. Under Federal Rule of Civil Procedure 9(b), the plaintiff must specifically describe the acts alleged to be fraudulent. Particularity is necessary to provide the defendant "fair notice of the plaintiff's claim and the factual ground upon which it is based." Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir.2000) (quoting Ross v. Bolton, 904 F.2d 819, 823 (2d Cir.1990)).

In order to provide this notice, the Complaint must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001) (quoting Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)). The complaint here largely fails to provide any of these particulars, instead simply lumping the defendants together in largely conclusory statements, such as that the defendants "fraudulently induced Plaintiff ING to enter into the 2010 Primary

---

[6] The Court also rejects the plaintiff's request for jurisdictional discovery. Plaintiff has not pointed to any fact that could be discovered that would change the analysis above, and it does not appear that there is any such fact.

Supplier Contract and the 2011 Price Schedule." Compl. ¶ 80. This will not suffice.

For the foregoing reasons, the Court, by Order dated November 17, 2011, dismissed the Individual Defendants for lack of personal jurisdiction and dismissed the fraudulent inducement claim without prejudice, giving the plaintiffs the opportunity to amend the fraudulent inducement claim but not to try to bring back the Individual Defendants.[7]

Dated: New York, NY
January 3, 2011

JED S. RAKOFF, U.S.D.J.

---

[7] The plaintiff did timely file an Amended Complaint, which is not at issue here.