13-489-cv
*ING Global v. United Parcel Service Oasis Supply Corporation*

N.Y.S.D. Case # 11-cv-5697(SC)

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term 2013

No. 13-489-cv

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 30, 2014

ING GLOBAL,

*Plaintiff-Counter-Defendant-Appellant*,

v.

UNITED PARCEL SERVICE OASIS SUPPLY CORPORATION,

*Defendant-Counter-Claimant-Appellee*,

Bone Safety Signs, LLC, Doug Vollenweider, Michael Rose, James Thompson,

*Defendants.*

_____

Appeal from the United States District Court
for the Southern District of New York.
No. 11-CV-5697

_____

ARGUED: DECEMBER 12, 2013
DECIDED: JUNE 30, 2014

_____

Before: POOLER, PARKER, and WESLEY, *Circuit Judges*.

_____

CERTIFIED COPY ISSUED ON 06/30/2014

Appeal from an order of the United States District Court for the Southern District of New York (Samuel Conti, *Judge*),[1] setting aside on the ground of manifest injustice a verdict awarding plaintiff, ING Global, attorney's fees on breach of contract claims. We hold that in light of defendant UPS's failure to move pursuant to Rule 50(a) and the existence in the record of evidentiary support for the verdict, the district court erred in setting the verdict aside. We also conclude that a new trial is not warranted. REVERSED and REMANDED.

————

      JOHN J. ZEFUTIE, JR. (Justin S. Strochlic, Ugo Colella, Anthony J. Laura, *on the brief*), Patton Boggs LLP, Newark, New Jersey, *for Plaintiff-Counter-Defendant-Appellant, ING Global*.

      ROBERT E. KAELIN (Michael D. Goldfarb, *on the brief*), Murtha Cullina LLP, Hartford, CT, *for Defendant-Counter-Claimant-Appellee, United Parcel Service Oasis Supply Corporation*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

  In October 2012, following a six-day trial, the jury returned a verdict in favor of plaintiff, ING Global ("ING"), on its breach of contract claims. The jury also awarded ING attorney's fees, to be set by the court, as permitted by Georgia law which governed the contract. Despite its failure to have moved pursuant to Rule 50(a)

---

[1] The Honorable Samuel Conti, United States District Judge for the United States District Court for the Northern District of California, sitting by designation.

for judgment as a matter of law prior to the submission of the case to the jury, defendant, United Parcel Service Oasis Supply Corporation ("UPS"), subsequently moved pursuant to Rule 59(e) to amend the judgment to set aside the award of attorney's fees or, alternatively, for a new trial on the issue of attorney's fees. The district court concluded that because the verdict was without legal support, it constituted manifest injustice and set aside the award of attorney's fees. UPS does not appeal from the jury's verdict against it on the breach of contract claims.

We hold that in light of UPS's failure to have moved for relief pursuant to Rule 50(a) and the existence of evidentiary support in the record for the jury's verdict, the district court erred in setting the verdict aside. We also conclude that a new trial is not warranted. Accordingly, we reverse the order granting UPS's motion and remand with instructions to reinstate the verdict and resolve ING's motion to set attorney's fees.

## I. BACKGROUND

The facts relevant to our decision are as follows. ING is a small company that produces Reusable Network Containers ("RNCs"), mesh bags used by UPS to consolidate numerous small packages into a larger one to reduce the number of handlings required by UPS's sorting and transportation system.

In 2010 UPS selected ING as the winner of a bidding process to become UPS's primary supplier of new RNCs. UPS and ING entered into contracts that contemplated an estimated volume of 1.2 million new RNCs over the three-year term of the agreement. The

contracts reserved to UPS the discretion to adjust the quantity or timing of the order for new RNCs, and also provided that additional quantities of new RNCs would be purchased according to an annexed price schedule.

During the summer of 2011, UPS decided to purchase an additional 624,629 new RNCs before the end of the year and, turning to other suppliers, backed away from its contract with ING. In the course of planning for the new order, the UPS commodity manager responsible for RNCs acknowledged in internal emails that UPS had "contracts in place" to cover the additional RNC's and that UPS had obligations under those contracts. However, in nearly simultaneous emails to ING, he took the contrary position that the new order of RNCs was separate from the existing contracts and that UPS had no purchase obligations under its existing contracts with ING.

He ultimately treated the 2011 order as separate from the existing contracts and invited several new vendors to submit bids. ING objected, contending that UPS's steps to rebid the order breached their contracts. However, in early August 2011, UPS awarded the contract for the additional RNCs to a competitor of ING that had offered a lower price.

ING then sued UPS for breach of the contracts. ING also alleged that UPS had acted in bad faith and sought to recover attorney's fees, as permitted under applicable Georgia law when a party acts in bad faith in making or performing a contract. Ga. Code Ann. § 13-6-11.

As part of their pretrial submissions, the parties submitted joint proposed jury instructions that explained the meaning of bad faith under Georgia law:

> Bad faith does not refer to bad faith in the prosecution of this litigation, but rather to the acts of UPS in dealing with ING prior to ING's filing of this lawsuit. Bad faith means a frivolous and unfounded denial of liability. If you find that UPS's actions before ING filed this lawsuit were frivolous and unfounded, then you must find that UPS acted in bad faith and award ING its attorney's fees. On the other hand, if you find that UPS had any reasonable ground to contest ING's breach of contract claim, then you must find there is not bad faith on the part of UPS and not award ING its attorneys' [sic] fees.

Simultaneously, UPS filed a motion *in limine* to preclude the introduction at trial of evidence of bad faith or of attorney's fees on the ground that, as a matter of law, it had a "reasonable ground" to contest ING's claims.[2] UPS's motion was denied and ING's claims proceeded to trial, during which it was permitted to present its evidence of bad faith which centered primarily around the conflicting emails and the denials by UPS that its contracts with ING obligated it to purchase additional RNC's from ING rather than competitors.

During the proceedings, UPS and ING each submitted proposed jury instructions that included a definition of bad faith substantively identical to the version submitted before

---

[2] UPS made a cursory pretrial objection to the jury instruction on the same grounds, incorporating by reference the argument from its motion *in limine.*

trial, except that ING objected to the inclusion of the "reasonable ground" defense in the jury instructions. The district court overruled that objection, adopted UPS's proposed instruction that included the "reasonable ground" defense with only minor non-substantive changes, and delivered it to the jury. UPS did not move pursuant to Rule 50 to challenge the sufficiency of ING's evidence of bad faith nor did it move for judgment as a matter of law on the basis that the"reasonable ground" defense precluded an award of attorney's fees.

Subsequently, the jury returned a verdict in favor of ING on the breach of contract claim, awarding it approximately $1.7 million in damages, which is not contested on this appeal. The jury also found that ING was entitled to an award of attorney's fees, which meant that the jury had found that UPS had acted in bad faith.

Following the verdict and the entry of judgment, ING moved to set the amount of attorney's fees and UPS cross-moved, pursuant to Rule 59, to amend the judgment by setting aside the award of attorney's fees or, in the alternative, for a new trial on fees on the ground that the verdict awarding them was against the weight of the evidence. In its motion, UPS raised for the first time new challenges to the court's charge on bad faith. UPS contended that Georgia law recognizes two distinct, mutually exclusive theories of bad faith; the "frivolous and unfounded denial of liability" theory which ING had argued and presented to the jury, and a separate "sinister motive" theory, involving "dishonest purpose," "conscious doing of wrong," or a "breach of known duty through some motive of interest or ill

1 will." Special App'x 17. UPS contended that under the former (but
2 not the latter) theory a party with a "reasonable defense" to a claim
3 cannot be found to have acted in bad faith and that it had such a
4 defense.

5 Notwithstanding that (1) the court had delivered the charge
6 on this issue that UPS had requested; (2) UPS had failed to object to
7 the charge under Rule 51; and (3) UPS had not argued that it was
8 entitled to judgment as a matter of law under Rule 50(a), the district
9 court accepted UPS's interpretation of Georgia law. The district
10 court concluded that the "frivolous and unfounded denial of
11 liability" theory did not apply because it was limited to cases in
12 which one party refused to pay the other. After reviewing the
13 evidence, the court concluded that UPS had reasonable,
14 nonfrivolous defenses. Even though it had not instructed the jury on
15 the "sinister motive" theory of bad faith, the district court analyzed
16 the case under that theory and concluded that ING's claim could not
17 succeed under that alternative.

18 Because UPS was seeking to have the jury's award of
19 attorney's fees set aside and to have judgment entered in its favor on
20 the issue, the district court concluded that UPS was "effectively"
21 moving under Rule 50(b) for judgment as a matter of law,
22 notwithstanding both the verdict and its failure to make an earlier
23 motion as required under Rule 50(a). The court then held that the
24 jury's finding on fees was "clearly erroneous" and concluded that
25 "to prevent manifest injustice," it was required to set aside the
26 award of attorney's fees or grant a new trial on fees. After
27 reweighing the evidence, the district court concluded that a new trial

could not result in a verdict in favor of ING.  The court then set aside the award of attorney's fees, effectively granting UPS judgment as a matter of law on the issue.  This appeal followed.

## II. DISCUSSION

### A. Legal Standards

Rule 59(e) allows a district court "to alter or amend a judgment."  Fed. R. Civ. P. 59(e).  We have explained that under the rule "district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice," that the rule "covers a broad range of motions," and that "the only real limitation on the type of the motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment."  *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008).

Here, however, UPS sought relief pursuant to Rule 59(e) that was substantively identical to judgment as a matter of law under Rule 50, as it sought to have the jury's verdict on attorney's fees set aside and to have judgment entered in its favor on that issue. Notwithstanding the "broad range of motions" available under Rule 59(e), and the absence of a "real limitation" on the type of motion permitted, we do not believe that the Rule permits a party to obtain judgment as a matter of law under Rule 59(e) after failing to comply with the carefully crafted structure and standards of Rules 50 and 51.[3]  A Rule 50 motion is intended to "inform[] the opposing party of

---

[3] In, *Schwartz*, 539 F.3d 132, the case UPS did cite for the proposition that judgment as a matter of law is available pursuant to Rule 59(e) following the entry of judgment, the district court granted a Rule 59(e) motion concerning a question of law that was presented for the

the challenge to the sufficiency of the evidence and afford[] a clear opportunity to provide additional evidence that may be available." Fed. R. Civ. P. 50 advisory committee's note to the 2006 amendments; *see also Lore v. City of Syracuse*, 670 F.3d 127, 152-53 (2d Cir. 2012) (citing the advisory committee's note and discussing the purpose of Rule 50 motions). Rule 51 requires parties to articulate and lodge their objections to jury charges before they are delivered so that "the trial court [will have] an opportunity to cure any defects in the instructions before sending the jury to deliberate." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 200 (2d Cir. 2004). Permitting a party out of compliance with Rules 50 and 51 to prevail under Rule 59(e) would render those Rules, which are basic to the conduct of federal trials, essentially superfluous. We are not inclined to endorse such a result except *perhaps* in unusually egregious circumstances, which are not presented in this case.

Motions under Rule 59 to alter or amend the judgment, or for a new trial, are normally reviewed for abuse of discretion. *See Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). However, because UPS was effectively seeking judgment as a matter of law and because the district court granted that relief, we will treat UPS's motion to have the attorney's fees verdict set aside as one for judgment as a matter of law pursuant to Rule 50. Accordingly, we will review the district court's decision *de novo* and apply the normal Rule 50 standards. *See Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013). We will consider UPS's alternative request for a new trial under the abuse of

---

first time by the jury's response to a special interrogatory on the verdict form. The parties had not had the opportunity to address the issue earlier and, thus, could not have been expected to comply with Rule 50.

discretion standard normally applicable to such motions.  *See Patrolmen's Benevolent Ass'n. of City of New York v. City of New York*, 310 F.3d 43, 50, 54 (2d Cir. 2002) (reviewing Rule 50 motion *de novo* and Rule 59(a) motion for abuse of discretion where party moved under both rules).

Under Rule 50(a), a motion for judgment as a matter of law must first be made before the case is submitted to the jury, and renewed following the verdict pursuant to Rule 50(b).  The law is pellucid that a party's failure to move under Rule 50(a) has consequences.  If that party later moves under Rule 50(b), the standard for granting judgment as a matter of law is elevated, and the motion may not properly be granted by the district court, or upheld on appeal, except to prevent manifest injustice.  *See Lore*, 670 F.3d at 153.  Manifest injustice exists where a jury's verdict is wholly without legal support.  *See Rothstein v. Carriere*, 373 F.3d 275, 291 (2d Cir. 2004); *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir. 1999); *cf. Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–128 (2d ed. 1995))).

When evaluating a motion under Rule 50, courts are required to "consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70

(2d Cir. 2001). "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury," and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id*.

When considering a motion for a new trial under Rule 59(a) on the ground that the jury's verdict is against the weight of the evidence, our cases "teach [that a] high degree of deference [is] accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).

### B. Manifest Injustice

The jury instructions on Georgia law that are at the center of UPS's appeal were substantively identical to the ones it submitted and which were delivered without objection from UPS. There is no dispute that the instructions were an accurate statement of Georgia law on the meaning of bad faith. Moreover, the instructions included the "reasonable ground" defense that UPS asserted in its motion *in limine* and in its post-judgment motion. For these reasons, it is clear to us that the jury instructions were not "wholly without legal support." *Rothstein*, 373 F.3d at 291.

At no point prior to its post-judgment motion had UPS raised its concerns about the jury instructions on bad faith, or articulated to the district court its two theories of bad faith under Georgia law. UPS was undoubtedly aware of the "reasonable ground" defense, as it was the subject of a pretrial *in limine* motion and of proposed jury

instructions.  However, UPS failed to preserve its contention that reasonable grounds existed as a matter of law because it did not move under Rule 50(a), nor did it object under Rule 51 to the court's charge on "reasonable grounds."  Thus, UPS has waived any argument on these grounds absent "manifest injustice."

We see no such injustice. The jury was properly instructed that a "reasonable ground" to contest a claim was a defense to a finding of bad faith, but rejected UPS's evidence and arguments on that point, as it was entitled to do.  The contracts provided that "[a]dditional quantities" of new RNCs "will be purchased at the identified pricing in this Price Schedule," and the UPS commodity manager acknowledged in internal emails that UPS had "contracts in place" to cover the purchase of the additional RNCs.  At the same time, evidence the jury was entitled to credit also showed that he took directly opposite positions in nearly simultaneous emails to ING and ultimately sought and secured new bids from ING's competitors whose prices undercut those in ING's contract.

Considering this evidence in the light most favorable to ING, and giving ING the benefit of all reasonable inferences that the jury might have drawn in its favor, we have little trouble concluding that a jury, though not compelled to do so, could have found that UPS acted in bad faith.  Under these circumstances, we see no injustice and certainly no manifest injustice.

Similarly, UPS's arguments concerning the two theories of bad faith it now contends exist under Georgia law do not change this result.  The arguments were, of course, forfeited by UPS's failure timely to raise them.  As we have seen, the jury was charged that

bad faith meant a "frivolous and unfounded denial of liability." This instruction was well grounded in Georgia case law. In post-trial motion practice, UPS argues for the existence under Georgia law of a specialized definition of "denial of liability" that limits it to "refusal to pay" cases. According to UPS this case was not such a case: It did not refuse to pay, it had no continuing obligation to purchase additional RNC's from ING and awarded contracts for them to another entity. Because we see no meaningful distinction between this conduct and a "denial of liability" or a "refusal to pay," we believe that the instruction that the court delivered adequately conveyed UPS's position to the jury. If UPS preferred a more nuanced or specific definition, it was obligated to request one. In any event, as we have noted, the evidence adduced at trial, viewed in the light most favorably to ING, was sufficient for a reasonable jury to have concluded that UPS engaged in an unfounded denial of contractual liability.

### C. New Trial

UPS moved in the alternative for a new trial pursuant to Rule 59(a) on the ground that the verdict was against the weight of the evidence, and renews that motion on appeal.

Our precedent is clear that a "decision is against the weight of the evidence if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice." *Raedle*, 670 F.3d at 417-18. Our cases teach that a high degree of deference is accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency. *Id.* Unlike on a Rule 50 motion, however, on a Rule 59 motion the court "may weigh the evidence and the

credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." *Id.* at 418. But when, as here, "a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Id.* at 418-19. This case is not such a case.

The jury, after hearing testimony from witness from both parties, concluded that UPS had acted in bad faith. As the district court noted, there was evidence that would militate against such a finding. But the jury was free to reject that evidence (as it apparently did) and to conclude, based on other testimony, that UPS acted in bad faith in its performance of the contracts. Given that this finding turned to a large extent on the credibility of the witnesses who testified before the jury, the finding and the verdict which followed are particularly ill-suited to after-the-fact second guessing. Our review of the record yields no basis on which to conclude that the jury's verdict was "egregious," "seriously erroneous," or "a miscarriage of justice."

## CONCLUSION

We reverse the district court's order setting aside the jury's award of attorney's fees. We REVERSE the order denying ING's motion to set attorney's fees, and we REMAND the case with instructions to reinstate the jury's verdict and resolve ING's motion for attorney's fees.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit